**Ervin Drew ADKINS, Appellant,**

v.

**COMMONWEALTH of
Kentucky, Appellee.**

No. 89-CA-483-MR.

Court of Appeals of Kentucky.

April 13, 1990.

William M. Butler, Jr., Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Todd D. Ferguson, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, C.J., and CLAYTON and McDONALD, JJ.

HOWERTON, Chief Judge.

Ervin Adkins appeals from a jury verdict and judgment of the Floyd Circuit Court finding him guilty of second-degree assault. KRS 508.020. Adkins contends that the trial court erred when it refused to instruct the jury on the lesser included offense of fourth-degree assault. KRS 508.030. We find no error and affirm.

Adkins was indicted for criminal attempt to commit murder when he shot his estranged wife, Greta, three times in the legs with a .25 caliber automatic pistol. A few days before the shooting, Adkins left on a three-day hunting trip, against his wife's wishes. While he was gone, Greta went out with another man, Ricky Rowe, and then confronted Adkins with this fact upon his return. She also testified that she told him falsely that she was pregnant, that she would not let him see his two children, and that they did not belong to him. It was at this point that they separated. Apparently, Greta felt that by making Adkins jealous and keeping him from his children, she could force him to spend more time with her.

On the day of the shooting, Adkins saw his wife, his daughter, and Rowe at a local grocery store. Adkins and his wife argued and then he left. He testified that he had been drinking for a couple of days and continued to drink until the evening when he went to the trailer he had shared with his wife and children. Adkins testified that he knocked on the door and that Greta let him in but told him to leave. He also stated that she told him she had found a better man and that she was leaving the state and he would never see his children again. He then pulled out the pistol, pointed it at her knee, and shot her. Greta was struck in her right thigh and knee and in her left thigh. Their four-year-old daughter was asleep on the couch in the room. Greta told Adkins to leave and he did so. Neighbors called an ambulance.

At trial, the jury was instructed on assault in the second degree and assault under extreme emotional disturbance. Adkins was found guilty of assault in the second degree.

Adkins asserts that the trial court erred when it refused to instruct the jury on assault in the fourth degree. KRS 508.020 provides in pertinent part, "(1) A person is guilty of assault in the second degree when: ... (b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument...." KRS 508.030 provides in pertinent part, "(1) A person is guilty of assault in the fourth degree when: ... (b) With recklessness he causes physical injury to

another person by means of a deadly weapon or a dangerous instrument."

With respect to this appeal, the only point that is being argued is Adkins' state of mind, that is, whether he acted intentionally or merely with recklessness. Adkins testified that he did not intend to shoot Greta, that his only intent was to scare her. At one point, he testified that he pointed the gun at her knee and it started going off. Adkins responded affirmatively to the question posed by the Commonwealth attorney, "Don't you have to pull the trigger to get the gun to go off?" The Commonwealth attorney then asked, "So you pulled the trigger three times?" Adkins then answered, "No, I didn't pull the trigger three times. I pulled it one time."

"A person acts intentionally ... when his conscious objective is to cause that result or to engage in that conduct." KRS 501.020(1). In KRS 501.020(4) we read:

A person acts recklessly ... when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

The commentary (1974) to this statute further explains that "reckless conduct involves inadvertent risk-creation."

It is difficult to see how a person could argue that pointing a gun at another person at close range and pulling the trigger admittedly one time, if not three times, was inadvertent risk-creation. That behavior certainly seems more compatible with the definition of "intentional," in that his conscious objective was to engage in that conduct. KRS 501.020(1). Adkins' testimony that the shooting was unintentional is not plausible; it stretches credibility beyond limit to see how the pistol could have fired three times without the intent to pull the trigger.

The jury must be instructed on the whole law of the case, reasonably supportable by the facts. *Callison v. Commonwealth*, Ky.App., 706 S.W.2d 434, 436 (1986) (citing *Lee v. Commonwealth*, Ky., 329 S.W.2d 57 (1959)). We agree that this was complied with in this case and that there was no error in refusing Adkins' request for an instruction on assault in the fourth degree. Therefore, we affirm.

All concur.