COMMONWEALTH of Kentucky,
Appellant,

v.

Gary DAVIDSON, Appellee.

No. 2006–SC–000180–DG.

Supreme Court of Kentucky.

Feb. 19, 2009.

Jack Conway, Attorney General of Kentucky, Jeffrey Allan Cross, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Special Justice MOORE.

The Commonwealth appeals from a Kentucky Court of Appeals' decision reversing Gary Davidson's conviction for assault in the second degree and subsequently barring a retrial for the same offense under the Double Jeopardy Clause. Upon review of the record, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of March 26, 2003, Crystal Williams was involved in a physical altercation with her former boyfriend, Gary Davidson, and his girlfriend at the time, Tracey Rogers. Williams allegedly traveled to Davidson's trailer home to collect some of her belongings and confront Davidson about why he left her for Rogers. The situation quickly escalated when, according to Davidson, Williams began fighting him as soon as he opened the door to his home.

Davidson testified that he tried to get Williams into the yard because she was out of control. After about fifteen minutes of fighting, Davidson and Rogers tied up Williams and placed duct tape over her mouth to keep her from yelling and biting. In support of his actions, Davidson claimed that he had no other option and was trying to prevent Williams from hurting them and herself.

The Commonwealth provided a much different description of the incident at trial. The Commonwealth put on proof that Davidson opened the trailer door and kicked Williams down the stairs. Williams then got up and walked into the yard. At this point, Davidson allegedly retrieved a rifle from his trailer and fired at Williams, who fell to her knees believing she had been shot after feeling something strike her chest. Davidson then apparently picked up Williams and carried her to a dog box in his front yard. He repeatedly attempted to stuff her into the dog box. Unsuccessful at that, Davidson continued to strike and choke Williams, place his knee on her chest, and duct taped her head, face, mouth and nose. At one point, Rogers kicked Williams in the legs and ribs as Davidson held her down. Finally, Davidson wrapped his belt around Williams's neck and dragged her into his trailer.

After receiving a tip from a passerby who heard the confrontation, two police officers arrived at Davidson's trailer and immediately arrested Davidson and Rogers. One officer testified that Williams was found on the kitchen floor bound at the ankles and feet with duct tape, had duct tape around her mouth and the lower part of her nose, and had blood coming from her face. After removing the duct tape from Williams's mouth and nose, the officer stated that Williams was having difficulty breathing and was beaten and unresponsive. Williams spent the following 36 hours in the hospital and was released after tests indicated she suffered no broken bones and her injuries did not require surgery.[1]

Davidson was found guilty of unlawful imprisonment in the first degree and as-

---

1. At the hospital, Williams was treated for multiple traumas and doctors found severe bruising to her face and body. In addition, a drug screen revealed the presence of Xanax,

sault in the second degree, but the jury found him not guilty of wanton endangerment. He was sentenced to one year in prison for the unlawful imprisonment charge and five years' imprisonment for the assault charge, with sentences to run consecutively for six years.

The Court of Appeals affirmed the unlawful imprisonment conviction but reversed Davidson's conviction for second-degree assault, holding the trial court committed palpable error when it instructed the jury on second-degree assault based on the theory that Davidson's fists were dangerous instruments. Moreover, the Court of Appeals ruled the Commonwealth was barred by double jeopardy from retrying Davidson for second-degree assault. We granted the Commonwealth's Motion for Discretionary Review, wherein the Commonwealth moves this Court to reconsider whether retrying Davidson for second-degree assault is barred by the Double Jeopardy Clause.

## II. ANALYSIS

Pursuant to Kentucky Revised Statute (KRS) 508.020(1), a person is guilty of assault in the second degree when

(a) He intentionally causes serious physical injury to another person; or

(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(c) He wantonly causes serious physical injury to another person by means of a

deadly weapon or a dangerous instrument.

Under KRS 500.080(3), "dangerous instrument"

means any instrument, including parts of the human body when a serious physical injury is a direct result of the use of that part of the human body, article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury.

■ Based on the plain meaning of KRS 500.080(3), we agree with the Court of Appeals' statutory interpretation that when the dangerous instrument in question is a part of the human body, the Commonwealth bears the burden of establishing that serious physical injury actually occurred as a direct result of the use of that part of the human body.[2] Because there was insufficient evidence to support a finding that Davidson's fists caused serious physical injury to Williams, the Court of Appeals held the trial court erred by instructing the jury on second-degree assault based on the theory that Davidson's fists were dangerous instruments.[3] Nevertheless, the Commonwealth insists the Court of Appeals improperly ruled that retrying Davidson on second-degree assault was barred by double jeopardy.

■ It is well established the Fifth Amendment of the United States Constitution and Section 13 of the Kentucky Constitution provide that no person shall "be

cocaine, methamphetamine, marijuana and other benzodiazepines (tranquilizers) in Williams's system.

2. " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of

the function of any bodily organ." KRS 500.080(15).

3. Although we find Davidson's conduct extremely offensive and deplorable, the Court of Appeals correctly determined the injuries Williams suffered from Davidson's fists did not amount to serious physical injury under KRS 500.080(15).

subject for the same offense to be twice put in jeopardy." *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988); *Radford v. Lovelace,* 212 S.W.3d 72, 79 (Ky.2006). However, as held in *Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978), a double jeopardy analysis requires a determination of whether the reversal of a conviction was due to trial error or insufficiency of the evidence. *See also Commonwealth v. Mattingly,* 722 S.W.2d 288 (Ky.1986).

▉▉▉ Reversal based on insufficiency of the evidence "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Burks,* 437 U.S. at 16, 98 S.Ct. at 2150. Moreover, the "Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Id.* at 18, 98 S.Ct. at 2150–51, whereas, double jeopardy does not bar a retrial on the same offense when reversal is due to trial error because it does not imply the government has failed to prove its case. *Id.* at 15, 98 S.Ct. at 2149. Instead, trial error "is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." *Id.*

▉▉▉ The Commonwealth contends retrial is not barred by double jeopardy pursuant to Kentucky Rule of Criminal Procedure (RCr) 9.54(1) because the trial court's failure to properly instruct the jury on the second-degree assault charge constitutes

trial error.[1] Yet, a thorough review of the Court of Appeals' rationale suggests otherwise, and the Commonwealth's attempt to label the reversal as trial error is misguided.

While it is true the trial court committed palpable error by instructing the jury on second-degree assault based on the theory that Davidson's fists were dangerous instruments, reversal of Davidson's conviction was ultimately based on the lack of evidence to support a finding that Williams suffered serious physical injury from Davidson's fists. Therefore, Davidson's conviction for second-degree assault was reversed due to insufficiency of the evidence, which is the equivalent of an acquittal for double jeopardy purposes.[5] Accordingly, we affirm the Court of Appeals' ruling that the Commonwealth is barred by double jeopardy from retrying Davidson on the charge of assault in the second degree.[6]

NOBLE, VENTERS, CUNNINGHAM, and ABRAMSON, JJ., and Special Justice R. MICHAEL SULLIVAN, concur. SCOTT, J. concurs in part and dissents in part by separate opinion. MINTON, C.J., and SCHRODER, J., not sitting.

Opinion by Justice WILL T. SCOTT, concurring in part and dissenting in part.

Although I concur with the Court's holding that the trial court's instructions on second-degree assault were erroneous for reasons that they required proof of a "physical injury," rather than a "serious physical injury" as required by KRS

---

4. "It shall be the duty of the trial court to instruct the jury in writing on the law of the case." RCr 9.54(1); *see also Fugate v. Commonwealth,* 445 S.W.2d 675, 682 (Ky.1969).

5. The Commonwealth raises additional arguments regarding improper jury instructions by the trial court. However, these issues were not preserved for appeal and are not properly before this Court.

6. As the Court of Appeals properly stated, the Commonwealth is not barred from retrying Davidson for the lesser charge of assault in the fourth degree.

500.080(3), I disagree that this "instructional error" constitutes grounds for a bar of double jeopardy. Thus, I respectfully dissent on this issue as this Court's finding of "insufficiency of the evidence" reflects a measurement of the evidence under a "new standard" created as a matter of first impression and, thus, does not constitute, or meet, the true "insufficiency of the evidence" standard required to effect a bar of double jeopardy. *United States v. Lanzotti*, 90 F.3d 1217, 1221 (7th Cir.1996).

In effect, this is nothing more than a situation where "the jury is misinformed regarding the correct legal standard applicable to the facts before it, and a reversal of the jury's conviction represents nothing more than a decision to that effect." *Id.* at 1223 (*citing Forman v. United States*, 361 U.S. 416, 424–26, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960)). Thus, "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge." *United States v. Scott*, 437 U.S. 82, 90–91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (internal citations omitted).

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he was obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves

defendants' rights as well as society's interest.

*United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). In short, reversal for trial error, as distinguished from real evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. *Hobbs v. Commonwealth*, 655 S.W.2d 472, 473–74 (Ky.1983) (*citing Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). Thus, we noted in *Hobbs:*

> As such, it implies nothing with respect to the guilt or innocence of the defendant. *Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.*

*Id. citing Burks* 437 U.S. at 15, 98 S.Ct. 2141 (emphasis in original).

Here, the "insufficiency of the evidence," as determined by the majority, was precipitated by its concurrent holding that guilt for beating someone with one's "fist" under a second-degree assault instruction (KRS 508.020) can only be established by proof of "serious physical injury." Such holding differs from what the Court said in *Commonwealth v. Potts*, 884 S.W.2d 654, 655 (Ky.1994), "[w]e would observe in that connection, that nothing in the above-cited statute defining second-degree assault requires infliction of a *serious* physical injury when one intentionally injures another by means of a deadly weapon, or as in this case, by means of a dangerous instru-

ment."; *See also Johnson v. Commonwealth,* 926 S.W.2d 463, 465 (Ky.Ct.App. 1996) (*citing Cooper v. Commonwealth,* 569 S.W.2d 668 (Ky.1978)) ("We believe the inclusion of parts of the human body as dangerous instruments depends on the facts of the case and the capability of the body part to 'cause death or serious physical injury.' ").

It is noteworthy that in *Johnson,* the treating physician testified that the "baby survived the trauma without prolonged injury and the baby [was] presently alert and healthy. Yet, the treating physician also testified, of seeing children die from similar injuries." *Johnson,* 926 S.W.2d at 465.

In this instance, upon the arrival of the police, the victim was unresponsive and was taken to the hospital in an ambulance, where she was treated for multiple traumas resulting from being beaten by Appellant's fists and a gun.[1] Due to the severity of the beating, she remained in the hospital for approximately thirty-six (36) hours. Indeed, like the child in *Johnson,* she was fortunate enough to have suffered no broken bones and required no surgery; however, Dr. Charles Stargill testified that the fact she did not suffer more severe injuries was a result, not of luck, but "divine providence."

The complexity and difficulty of the question presented to the parties, and the Court below, is understandable as the construction this Court now places upon KRS 508.020(1)(b) makes it mirror KRS 508.010(1)(a), assault in the first-degree, which predicates guilt upon the finding that one "intentionally causes 'serious physical injury' to another person by

means of a deadly weapon or dangerous instrument." If nothing else, this symmetry illustrates the constructional difficulty one could have with giving priority to the "serious physical injury" language in KRS 500.080(3) over the specific requirement of "physical injury" set out in KRS 508.020(1)(b).

The failure, however, was "trial error," and the only reason by which the Court of Appeals, and now this Court, reaches an opinion of insufficiency of the evidence. This two-step process, however, is the reason a secondary "insufficiency of the evidence" finding does not raise the bar of double jeopardy. This is so "[b]ecause the government 'cannot be held responsible for "failing to muster" evidence sufficient to satisfy a standard ... which did not exist at the time of trial,' and because this is trial error' rather than 'pure insufficiency of evidence,' [the appellant] may be retried without violating double jeopardy." *United States v. Pearl,* 324 F.3d 1210, 1214 (10th Cir.2003) (*citing United States v. Wacker,* 72 F.3d 1453, 1465 (10th Cir. 1995)); *see also Lanzotti,* 90 F.3d at 1220.

In *United States v. Davis,* 873 F.2d 900 (6th Cir.1989), the appellant, Davis, was convicted of violating the Federal Mail Fraud statute. On appeal, his conviction was overturned on grounds that the indictment, based upon the "intangible rights" theory subsequently disavowed by the Supreme Court in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), was legally deficient. Following remand, a superseding indictment was returned on the same factual grounds, but a different legal theory. In allowing retrial under the superseding indictment, the

---

1. The victim was struck by Appellant's girlfriend *with the gun.* However, Appellant's indictment charged him with second-degree assault, "acting alone or in concert with others," as did the instruction, i.e., "acting alone or in concert with others, he intentionally caused a physical injury to [the victim] by striking her with his fists." This aspect of the instruction has not been considered in the Court's analysis.

court in *Davis* distinguished *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir.1988), noting the defendant in *Saylor* was indicted on two counts whereas the jury was only instructed on one. *See Davis*, 873 F.2d at 904–905. "[I]t seems clear from our opinion that if Mr. Saylor had been indicted and tried on one theory only, he might, as we saw it, have been subject to a later trial on the second theory regardless of the outcome of the first trial." *Id.* at 905.

In *Davis*, the defendant was only indicted on one charge, under the "intangible rights" theory, which as aforesaid, was later found by the Supreme Court in *McNally*, to be invalid. On review, the court noted that "the conduct that would have to be proved in order to obtain a conviction would be the same under both indictments." *Davis*, 873 F.2d at 905.

Distinguishing the unfair advantage which would have accrued to the prosecutor in *Saylor*, by holding back charges on one count of the indictment, the court noted:

> The prosecutor gained no unfair advantage by limiting the indictment of Mr. Davis to an intangible rights theory. Had the prosecutor been given the prescience to realize that [*United States v. Gray*, 790 F.2d 1290 (6th Cir.1986), *rev'd sub nom. McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)] would be reversed in *McNally*, the indictment of Mr. Davis would unquestionably have been drawn differently. As noted above, moreover, if the jury had acquitted Mr. Davis in the trial on the original indictment, there could have been no new trial even if the Supreme Court had affirmed *Gray* in *McNally* instead of reversing it. The potential for prosecutorial abuse that led us to find a termination of jeopardy in *Saylor* simply had no counterpart here.

*Id.* at 906. Thus, in *Davis*, the prosecution was not prohibited by the double jeopardy bar from re-indicting the defendant on a permissible theory of mail fraud using the same facts at retrial.

Here, like *Davis*, an instruction was given on every count of the indictment, namely: (1) unlawful imprisonment in the first-degree by knowingly and unlawfully restraining the liberty of Crystal Williams while "acting alone or in concert with others;" (2) assault in the second-degree by knowingly and intentionally striking Crystal Williams with his fists and thereby causing her physical injury "while acting alone or in concert with others;" and (3) wanton endangerment in the first-degree by firing a rifle at Crystal Williams, thereby creating a "substantial danger of death or serious physical injury to [her]." Thus, unlike *Saylor*, and consistent with *Davis*, no unfair advantage was sought, or taken, by the prosecution.

Moreover, the majority's opinion overlooks the likelihood raised by the other instructions, that the limitation of causing physical injury by striking her with his "fists" was an unintentional error on the court's part. For example, the first-degree unlawful imprisonment instruction (Instruction 1A) refers to the actions of the Appellant as, "acting alone or in concert with others, [the Appellant] restrained Crystal Williams of her liberty by beating her, taping her with duct tape [and] tying her with [a] rope or string." The self-protection instruction (Instruction 4), incorporated by reference into the second-degree assault instruction (Instruction 2A), defines the Appellant's right to self-protection, "if at the time [the Appellant] was beating her, taping her with duct tape, tying her with [a] rope or string, if he did so, he believed that Crystal Williams was then and there about to use physical force upon him." Thus, the organization of the

instructions suggest it is likely that insertion of the language necessary for the fourth-degree assault instruction, i.e., "intentionally caused physical injury to Crystal Williams by striking her with his fists," may have created a clerical error, unnoticed by the parties, in the second-degree assault instruction, which used the same language (albeit with the additional language required) that "fists were a dangerous instrument as defined under instruction no. 5."[2] Thus, for reasons that the reversal of this case arose from a first-impression reconciliation of the conflict between KRS 500.080(3) and KRS 508.020(1)(b), which, in turn, recognized the trial court's instructional error, and only then a secondary finding of "insufficiency of the evidence, the error at hand was 'trial error'" and the bar of double of jeopardy does not apply.

---

2. "Generally, instructions should be based on the evidence introduced at trial, and any variance between the language of the indictment and the language of the instruction is not deemed prejudicial unless the defendant was misled." *Taylor v. Commonwealth,* 995 S.W.2d 355, 359 n. 1 (Ky.1999) (citations omitted).