RENDERED: MAY 24, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1390-MR

JESSE DANIEL ASHCRAFT                                        APPELLANT

v.                APPEAL FROM CAMPBELL CIRCUIT COURT
                  HONORABLE JULIE REINHARDT WARD, JUDGE
                  ACTION NO. 21-CR-00120

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

ECKERLE, JUDGE: Appellant, Jesse Daniel Ashcraft ("Ashcraft"), punched

Michael Landrum ("Landrum") multiple times during a barroom fight. Landrum's

eye (which was already not healthy, though the Trial Court did not permit this

information to be revealed to the jury) ruptured. Six months later, Landrum

suffered the permanent removal of the eye. Appellee, the Commonwealth of

Kentucky ("Commonwealth"), charged Ashcraft with Assault in the First Degree. At the conclusion of trial, the jury convicted him of the lesser-included offense of Assault in the Second Degree under an imperfect self-defense theory. The Trial Court followed the jury's recommendation and sentenced him to the maximum sentence of imprisonment for ten years. Ashcraft appeals as a matter of right.

## BACKGROUND

The fight occurred on August 16, 2020, at the Sit N' Bull Café in Campbell County, Kentucky. Surveillance video footage showed nearly the entire incident, although the footage contains no audio sound. It revealed that Ashcraft was sitting at the bar with his date, Tabitha Ferrell ("Ferrell"), while Landrum, Tim Sandfoss ("Sandfoss"), and others played pool at a nearby table. At some point, Ferrell began looking over at Sandfoss and sticking up her middle finger at him. Landrum noticed this activity and eventually approached Ashcraft and Ferrell. Words were exchanged, with all parties having differing recollections about the exact exchanges. It appears that Ferrell may not have paid Sandfoss for past home improvement work.

At some point Ashcraft got up and stood between Landrum and Sandfoss. A kerfuffle ensued, and Landrum pointed for Ashcraft to exit. Landrum also dropped his pool stick.

Ashcraft then turned around and hit Landrum approximately a half-dozen times. Landrum claims his vision in his right eye immediately went black. Others jumped into the melee, with Ashcraft also fighting Sandfoss and throwing pool balls.

Police officers arrived shortly after the brawl terminated. They obtained numerous statements from witnesses and the parties. Ashcraft initially told the officers that he was at the bar when multiple individuals jumped him, and they struck him first. The surveillance footage did not support that statement.

At trial, Ashcraft testified that he felt unwelcome from the moment that he walked into the bar with Ferrell. He claimed that Landrum approached him several times and made statements about Ferrell's alleged need to pay her debts. Ashcraft believed that these comments constituted a threat. After he moved to stand between Landrum and Sandfoss, Ashcraft perceived that he was going to be attacked due to the language used and Landrum's action of pointing at the door. Ashcraft claimed that he was surrounded, pinned in on all sides, and believed they were going to fight him. He also cited fear for Ferrell's safety. Accordingly, he began fighting.

After the fight, medical professionals determined that Landrum's right eye sustained a global rupture. Landrum underwent surgery soon afterwards, and months later, he suffered a total removal of the eye.

A grand jury indicted Ashcraft on a charge of Assault in the First Degree on the theory that his fists constituted dangerous instruments that caused a serious, physical injury.[1]  At the following petit jury trial, Ashcraft sought to introduce evidence that Landrum endured preexisting, medical issues with his right eye that caused it to be highly susceptible to rupture.  Ashcraft also sought to introduce expert testimony regarding these issues and the ability of a healthy eyeball to withstand multiple punches.  The Trial Court excluded all of this evidence, over the objection of Ashcraft, who introduced it by avowal.

At the conclusion of a four-day trial, a jury returned a guilty verdict of Assault in the Second Degree based upon an imperfect self-defense theory and recommended the maximum sentence of imprisonment for ten years.  The Trial Court issued a judgment and sentence in accordance with that verdict.  Ashcraft appeals as a matter of right.

## ANALYSIS

Ashcraft raises four issues on appeal.  We discuss them in the order presented.

---

[1] The initial indictment was for one count of Assault in the Second Degree for the actions against Landrum and one count of Assault in the Fourth Degree for the actions against Sandfoss.  The Commonwealth later obtained a superseding indictment raising the degree of the felony assault charge.  It dismissed the misdemeanor assault charge prior to *voir dire*.

I.      **Did the Trial Court abuse its discretion by excluding evidence of Landrum's preexisting eye injury and treatment?**

Ashcraft first claims that the Trial Court committed reversible error when it allegedly abused its discretion and excluded certain evidence regarding Landrum's preexisting medical conditions. We agree.

Prior to trial, Ashcraft filed motions to introduce evidence and expert opinion regarding Landrum's prior medical issues related to his eye. Ashcraft wanted to show that Landrum previously underwent a corneal transplant that was fragile and could easily be re-opened, causing the eye to rupture. The Commonwealth opposed Ashcraft's motions and filed its own motion to exclude any references to Landrum's preexisting, eye issues. The Trial Court excluded the evidence as irrelevant pursuant to KRE[2] 401. Ashcraft continually revisited the exclusion throughout the trial and during an avowal presentation of Ashcraft's proposed expert. The Trial Court never altered its pretrial ruling.

Ashcraft argues on appeal that the evidence should have been admitted because the evidence was relevant to: (1) the *mens rea*; (2) the element of wantonness or recklessness under the imperfect self-defense instruction; (3) the factual determination of whether Ashcraft's hands constituted a dangerous instrument; and (4) the penalty phase because the evidence explained allegedly

---

[2] Kentucky Rules of Evidence.

mitigating circumstances of the offense.  We agree that the evidence was relevant on the dangerous instrument element; thus, we reverse and remand for a new trial.  As the Trial Court should have allowed this evidence to be presented during the guilt phase on this singular ground, we do not address Ashcraft's *mens rea*, wantonness/recklessness, and penalty phase arguments, although they likewise appear to have merit.

KRE 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  "All relevant evidence is admissible" except for certain statutory, rule-based, and constitutional exclusions, and "[e]vidence which is not relevant is not admissible."  KRE 402.  "Relevancy is established by any showing of probativeness, however slight."  *Springer v. Commonwealth*, 998 S.W.2d 439, 449 (Ky. 1999).  As our Supreme Court has announced:

> An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered.  It need not even make that proposition appear more probable than not.  It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence.  Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable.

*Turner v. Commonwealth*, 914 S.W.2d 343, 346 (Ky. 1996) (quoting Robert G.

Lawson, *The Kentucky Evidence Law Handbook* § 2.05, at 53 (3d ed. 1993) (citing

Cleary, *McCormick on Evidence*, at 542-543 (3d ed. 1984)).

We review the Trial Court's evidentiary ruling for abuse of discretion.

*Webb v. Commonwealth*, 387 S.W.3d 319, 324 (Ky. 2012) (citing *Anderson v.

Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007)). "The test for an abuse of

discretion 'is whether the trial judge's decision was arbitrary, unreasonable, unfair,

or unsupported by sound legal principles.'" *Anderson*, 231 S.W.3d at 119 (quoting

*Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

A Kentucky statute defines "dangerous instrument" as follows:

> . . . any instrument, including parts of the human body
> when a serious physical injury is a direct result of the use
> of that part of the human body . . . which, under the
> circumstances in which it is used, attempted to be used,
> or threatened to be used, is readily capable of causing
> death or serious physical injury.

KRS[3] 500.080(3). As our Court has previously held, whether parts of the human

body are "dangerous instruments depends on the facts of the case and the

capability of the body part to 'cause death or serious physical injury.'" *Johnson v.

Commonwealth*, 926 S.W.2d 463, 465 (Ky. App. 1996) (quoting *Cooper v.

Commonwealth*, 569 S.W.2d 668 (Ky. 1978)). The apparent fragility of the victim

---

[3] Kentucky Revised Statutes.

is relevant to whether a human body part is a dangerous instrument. *See, e.g.*, *Johnson*, 926 S.W.2d at 465 (holding that an adult striking a two-month-old "is precisely the kind of assault the legislature believed justified increasing the degree of such an offense"). However, "a strike with an untrained hand to an adult is unlikely to cause death or serious injury, while the hand of one trained in martial arts may be considered a dangerous instrument." *Id*. Additionally, it is the Commonwealth's burden to establish "that serious physical injury actually occurred as a direct result of the use of that part of the human body." *Commonwealth v. Davidson*, 277 S.W.3d 232, 234 (Ky. 2009).

Here, the evidence that the jury was allowed to hear demonstrated that the punches were a direct cause of Landrum losing his eye; however, the excluded evidence demonstrated that the punches were *at most* a contributing cause of the eye loss *and* that they may not have been a direct cause at all. *Cf. Adcock v. Commonwealth*, 702 S.W.2d 440, 444 (Ky. 1986) (citing *Hubbard v. Commonwealth*, 304 Ky. 818, 202 S.W.2d 634 (1947); *Hopkins v. Commonwealth*, 117 Ky. 941, 80 S.W. 156 (1904)) ("Even though a person suffers from serious maladies from which he will die sooner or later, to the extent that the infliction of an injury hastens death and causes it to occur sooner rather than later, the injury is a direct cause of the death at the time it occurred."). While the loss of an eye undoubtedly constitutes a serious, physical injury, the manner and cause of that

loss are not as clear here because a proper assessment of the alleged instrument of causation, *i.e.*, a layman's hands, was never allowed to be made. *Jones v. Commonwealth*, 737 S.W.2d 466, 468 (Ky. App. 1987).

Without a complete, honest assessment of Landrum's preexisting medical condition that painted a complete picture of the facts, the jury could not make an informed or accurate decision about whether Ashcraft's hands were "readily capable" of causing a serious physical injury. KRS 500.080(3). Landrum appeared to be a normal, healthy, middle-aged man of similar stature to Ashcraft; thus, there was no apparent fragility of the victim. *See Johnson*, *supra*. And there was no evidence that Ashcraft had any special training in hand-to-hand combat that would elevate Ashcraft's hands to dangerous-instrument status. *Id*. Thus, to make a proper factual determination that Ashcraft's fists were "readily capable" of causing serious, physical injury such that they constituted dangerous instruments, a jury should have been permitted to hear evidence that Landrum suffered from preexisting medical issues relating to the serious, physical injury claimed.

Otherwise, and without such available evidence, the jury was permitted to conclude that Ashcraft's fists were readily capable of causing serious, physical injury solely because they were used to punch a normal, healthy eye so hard that the direct result was the rupture and removal of the eye. Thus, the Trial Court permitted the jury to base its conclusion on "facts" that were manifestly

untrue because the undisputed, actual facts that showed that the eye was neither normal nor healthy, and these facts were hidden from the jury. Had the jury been aware that the eye was already fragile, they might have found Ashcraft's hands were not dangerous instruments because they were not readily capable of causing serious, physical injury. *See generally Williams v. Commonwealth*, No. 2015-SC-000307-MR (Ky. Feb. 16, 2017) ("We do not hold, and we do not intend to suggest, that in every assault resulting in a serious physical injury, the instrument of attack, whether it be a hand, a foot, or some other object, is conclusively a 'dangerous instrument,' and thus a first degree assault."). Notably, during the avowal testimony, Ashcraft's expert opined that a punch to a healthy eye would not cause an eyeball to rupture.[4]

Because the evidence was relevant to a factual issue to be determined by the jury on an essential element of the crime charged, the Trial Court should have admitted it. Moreover, because the exclusion of this evidence prohibited Ashcraft from showing that his hands did not qualify as dangerous instruments, the Trial Court also denied Ashcraft the right to present a defense on a required element. *See, e.g.*, *Beaty v. Commonwealth*, 125 S.W.3d 196, 206-10 (Ky. 2003),

---

[4] The Commonwealth alternatively requested a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), regarding Ashcraft's expert. The Trial Court excluded the testimony on other grounds and did not rule on this issue. Neither of the parties has raised it on appeal; thus, we do not address it.

*overruled in part by Gray v. Commonwealth*, 480 S.W.3d 253 (Ky. 2016).  Its exclusion was thus an abuse of discretion.  Accordingly, reversal and remand for a new trial is required.

## II.    Did the Trial Court Err in its Jury Instructions?

Ashcraft next argues that the Trial Court erred by declining to instruct the jury on stand-alone, second-degree (intentional and wanton theories) and fourth-degree, assault instructions.  The Trial Court did not give any of these instructions because it held that the injury was a serious, physical injury, and there was no indication the actions were anything other than intentional.  As we are reversing and remanding for a new trial where additional evidence may be introduced on the dangerous instrument element, we will provide some guidance on these issues.

A Trial Court has an obligation to instruct the jury on the whole law of the case and on all offenses supported by the evidence.  RCr[5] 9.54(1); *Clark v. Commonwealth*, 223 S.W.3d 90, 93 (Ky. 2007) (citation omitted).  Furthermore, instructions on lesser included offenses are appropriate when the evidence permits that "a reasonable juror could entertain a reasonable doubt as to the defendant's guilt of the greater offense, but believe beyond a reasonable doubt that the

---

[5] Kentucky Rules of Criminal Procedure.

defendant is guilty of the lesser offense." *Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999) (citations omitted).

Second-degree assault occurs when a person: (1) intentionally causes serious, physical injury to another person; (2) intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or (3) wantonly causes serious, physical injury to another person by means of a deadly weapon or a dangerous instrument.

Thus, the Trial Court may instruct the jury on theory (1) if the evidence shows that Ashcraft acted intentionally, and his actions were the direct cause of a serious, physical injury. The Trial Court may also instruct the jury on theory (3) IF it also includes a determination for the jury to make as to whether Ashcraft's hands constituted dangerous instruments. However, assuming the evidence produced at a future trial is similar to the instant trial, it cannot instruct on second-degree assault theory (2) or on fourth-degree assault, because the injury suffered was a serious, physical injury, and not merely a physical injury. KRS 508.030; *Jones*, 737 S.W.2d at 468.

Ashcraft argues repeatedly throughout his brief that he never acted intentionally because he never intended on causing a serious, physical injury. However, he ignores that he intended on engaging in the conduct that may have been the direct result of serious, physical injury. "A person acts intentionally with

-12-

respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause that result or to engage in that conduct." KRS 501.020(1). All evidence introduced, including Ashcraft's own testimony, was that he purposefully turned and punched Landrum in the face. "That behavior certainly seems more compatible with the definition of 'intentional,' in that his conscious objective was to engage in that conduct." *Adkins v. Commonwealth*, 787 S.W.2d 272, 273 (Ky. App. 1990). Thus, it is for the jury to conclude whether his actions were intentional.

III. **Did the Trial Court Err in its Procedures for Refreshing Recollection?**

Ashcraft next argues that the Trial Court committed reversible error in requiring Ashcraft to use certain procedures to refresh and/or impeach witnesses with their prior-recorded statements. As we are reversing and remanding for a new trial regarding improperly excluded evidence, we do not need to determine whether reversible error occurred on this, separate ground. Our Supreme Court has recently detailed the mechanisms for refreshing and/or impeaching witnesses with their prior-recorded statements. *Alderson v. Commonwealth*, 670 S.W.3d 884, 901-02 (Ky. 2023). Such specifications should be followed as necessary on remand.

-13-

## IV. Did Ashcraft's Trial Suffer from Cumulative Errors?

Finally, Ashcraft argues that he is entitled to a new trial due to cumulative errors. As we are reversing and remanding for a new trial, this argument is moot.

## CONCLUSION

Ashcraft was erroneously precluded from presenting evidence of an essential element of the charge of Assault in the First-Degree. Accordingly, we REVERSE AND REMAND the judgment and sentence entered against Ashcraft for a new trial to be held at which Ashcraft may present evidence of Landrum's preexisting medical issues with his eye and other such admissible evidence that is relevant and probative of whether Ashcraft's hands constitute dangerous instruments.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sarah D. Dailey
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky