# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMSC-021

Filing Date: April 7, 2025

No. S-1-SC-39841

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MAWU EKON REVELS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Grace B. Duran, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Van Snow, Assistant Solicitor General
Santa Fe, NM

for Appellee

## OPINION

**BACON, Justice.**

## I. INTRODUCTION

{1} In this capital appeal, Defendant-Appellant Mawu Ekon Revels (Defendant) challenges his first-degree felony murder conviction that was based on the predicate felony of aggravated assault. Defendant argues, as a matter of law, aggravated assault can never serve as the predicate felony for felony murder and therefore urges us to vacate his felony murder conviction. If the Court vacates his conviction, Defendant argues resentencing on second-degree murder is improper and retrial is barred by double jeopardy and the direct remand rule.

**{2}** Defendant also challenges the sufficiency of the evidence for his convictions for conspiracy and shooting at a motor vehicle; raises a double jeopardy challenge to his convictions for aggravated assault and shooting at a motor vehicle; challenges the legality of the district court's imposition of a four-year firearm enhancement; and argues he should be given a new trial because the prosecutor improperly struck a Black juror from the venire.

**{3}** We hold Defendant's first-degree felony murder conviction must be vacated because it was predicated on an aggravated assault, which is a noncollateral felony that can never be the basis of a felony murder conviction. However, we also hold double jeopardy does not bar retrial when a defendant is convicted of a nonexistent crime, such as felony murder that is predicated on a noncollateral felony. We further clarify that the direct remand rule does not apply to such cases because it only applies to acquittals.

**{4}** We further hold one of Defendant's two conspiracy convictions was unsupported by substantial evidence. Accordingly, we vacate that conviction. We reverse the district court's imposition of a four-year firearm enhancement because the district court lacked statutory authority to enhance the sentence by four years. Finding no merit in Defendant's other claims, we affirm Defendant's remaining convictions and remand for proceedings consistent with this opinion.

## II.     BACKGROUND

**{5}** This case arises out of a deadly shooting at a house party in Las Cruces. A fight involving many partygoers broke out in the early morning hours of July 31, 2021, culminating with multiple gunshots. Some of the bullets hit the car of a young woman named Jayissa Borrunda (Borrunda) while she was driving away, shattering her windshield. One of the bullets pierced the lung of Nicodemus Gonzales (Victim), who died at the scene.

**{6}** Bullet casings from a .45 caliber handgun and a 9mm handgun were found on the ground nearby. Police picked up the casings instead of leaving them in place, which limited the evidentiary value of the casings. Forensic analysts could not determine what caliber of bullet caused the fatal injury.

**{7}** Although eyewitnesses gave conflicting testimony about the chaotic scene, two witnesses testified they saw Defendant and his cousin Isaiah Taylor (Taylor) brandishing guns with laser sights. Borrunda testified Defendant's laser sight was red and Taylor's laser sight was green. Another witness corroborated the fact that Defendant's laser sight was red. Borrunda testified she saw a green laser moving around the inside of her car before hearing the gunshots that shattered her windshield.

**{8}** When police searched Defendant's house and car, they found 9mm bullets, a handgun magazine, and an instruction manual for a laser sight. Defendant denied having or touching a gun. However, he also texted his mother from jail that he could "tell [police] the exact guns used and what happened to them all." No gun was ever recovered.

**{9}** Defendant, who was seventeen years old at the time of the crime, was charged as a Serious Youthful Offender with first-degree (willful and deliberate) murder and other offenses. Shortly before trial, a new prosecutor for the State took over the case and moved to amend the indictment to add a charge of first-degree felony murder, but the prosecutor did not identify a predicate felony. The district court allowed the State to proceed on that undefined alternative theory because defense counsel did not want to delay trial to resolve the issue.

**{10}** After the State rested its case, the district court directed a verdict of acquittal as to the first-degree (willful and deliberate) murder charge, leaving the jury to decide the first-degree felony murder as the highest offense in the case, based on the predicate felony of accessory to aggravated assault.

**{11}** The jury convicted Defendant of first-degree felony murder (as an accomplice to aggravated assault); aggravated assault as a principal for brandishing a weapon and frightening Borrunda; two counts of conspiracy (to commit aggravated assault and to commit shooting at a motor vehicle); and shooting at a motor vehicle (for shooting at Borrunda's car). The jury also found a firearm was used in the aggravated assault.

**{12}** The district court sentenced Defendant to thirty years (with ten years suspended) for the first-degree felony murder; eighteen months for the aggravated assault "to be enhanced by 4 years for Firearm," which was to be served consecutively to the sentence imposed for murder; and eighteen months each for the two conspiracy convictions and the shooting at a motor vehicle conviction, all of which were to run concurrently with the sentence for the aggravated assault.

**{13}** Other relevant facts will be developed as necessary within the discussion below.

## III. DISCUSSION

### A. Aggravated Assault Cannot Serve as the Predicate Felony for Felony Murder; Therefore, Defendant's Felony Murder Conviction Must Be Vacated

**{14}** This Court has long recognized a valid felony murder conviction must be predicated on a felony that is "collateral" to the homicide (a doctrine known as the "collateral-felony doctrine"). *See Campos v. Bravo*, 2007-NMSC-021, ¶¶ 9-12, 141 N.M. 801, 161 P.3d 846 (tracing the origins of and principles behind the doctrine). "The collateral-felony doctrine derived from our concern that the prosecution may be able to elevate improperly the vast majority of second-degree murders to first-degree murders by charging the underlying assaultive act as a predicate felony for felony murder." *Id.* ¶ 10 (internal quotation marks and citation omitted). To prevent such a workaround, the collateral-felony doctrine "requires the . . . felony murder (the predicate felony) to have a felonious purpose different from that of endangering the physical health of the victim." *State v. Groves*, 2021-NMSC-003, ¶ 1, 478 P.3d 915 (internal quotation marks and citation omitted). While the collateral-felony doctrine "has generated the most confusion" among the limitations we have placed on felony murder, *State v. Marquez*, 2016-NMSC-025, ¶ 14, 376 P.3d 815, there is no room for confusion in this case. In this case, the

application of the doctrine is crystal clear: the predicate felony of aggravated assault is noncollateral and, therefore, may not serve as the predicate felony for first-degree felony murder.

**{15}** We have long held aggravated assault—the predicate felony for Defendant's felony murder conviction—"may never be used as [the] predicate felon[y] to felony murder" because "it is clearly not possible to commit second-degree murder without also committing *some form* of aggravated assault." *Bravo*, 2007-NMSC-021, ¶ 10. To remove any trace of doubt, this Court emphasized, "[w]e meant what we said in [*State v. Campos*, 1996-NMSC-043, ¶ 23, 122 N.M. 148, 921 P.2d 1266]: all forms of aggravated assault and aggravated battery will 'always be deemed to be noncollateral.'" *Bravo*, 2007-NMSC-021, ¶ 12.

**{16}** "Because a conviction violating the collateral-felony doctrine is a legal nullity, it would be fundamental error to uphold such a conviction." *Id.* ¶ 19. Therefore, whenever a felony murder conviction is predicated on an aggravated assault, the felony murder conviction must be vacated. *See id.* ¶ 11 ("[W]hen the collateral-felony doctrine is violated, the defendant's felony murder conviction is vacated."). Because Defendant's felony murder conviction was predicated on an aggravated assault, his felony murder conviction is null. Accordingly, we vacate the conviction.

## B. Retrial Is Permitted on First-Degree Felony Murder and Any Lesser Included Offense Thereof

**{17}** Because the State appropriately conceded the felony murder conviction must be vacated as a nonexistent crime, the most contentious issue in this case is the remedy on remand. Defendant argues retrial or resentencing is prohibited by double jeopardy because a reversal on the basis of a nonexistent crime—such as our reversal here based on a violation of the collateral-felony doctrine—is tantamount to an acquittal.

**{18}** Defendant further argues the direct remand rule prohibits reprosecution on lesser included offenses because the State followed an all-or-nothing trial strategy, resulting in the jury not receiving an instruction on any lesser included offense of felony murder. The State argues, inter alia, resentencing on the lesser included offense of second-degree murder is an available remedy because this Court can always remand for entry of judgment on second-degree murder in every case in which we vacate a felony murder conviction. We reject these arguments and clarify the law.

### 1. Double jeopardy bars retrial after acquittal but permits retrial after a conviction is reversed for trial error

**{19}** Double jeopardy law governs the circumstances under which the state can prosecute a defendant a second time. Double jeopardy "law attaches particular significance to an acquittal[,] . . . however mistaken the acquittal may have been." *United States v. Scott*, 437 U.S. 82, 91 (1978). "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that a verdict of acquittal cannot be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and

thereby violating the Constitution." *State v. Lizzol*, 2007-NMSC-024, ¶ 7, 141 N.M. 705, 160 P.3d 886 (text only)[1] (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)).

**{20}**   An acquittal is "a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged," *Scott*, 437 U.S. at 97 (text only) (citation omitted), whether that resolution occurs at trial or on appeal. An acquittal occurs on appeal when an appellate court reverses for insufficient evidence, because that is tantamount to a finding that the State's evidence failed to establish beyond a reasonable doubt the factual elements of the offense charged. *See Burks v. United States*, 437 U.S. 1, 17-18 (1978) (holding reversal on appeal for insufficient evidence is an acquittal). Therefore, "a defendant may not be retried after the conviction is set aside because of insufficient evidence." *Lizzol*, 2007-NMSC-024, ¶ 15; *see also State v. Gonzales*, 2013-NMSC-016, ¶ 17, 301 P.3d 380 ("It is settled law that if a conviction is overturned for insufficient evidence, the reversal is treated as an acquittal for double jeopardy purposes. . . . The [s]tate does not get a second chance to amass additional evidence of guilt.").

**{21}**   In contrast, "when a defendant challenges his or her conviction on grounds other than sufficiency of the evidence, the Double Jeopardy Clause does not bar a retrial." *Lizzol*, 2007-NMSC-024, ¶ 10 (emphasis omitted). Appellate reversal on any grounds other than evidentiary insufficiency is considered reversal for trial error and is not "a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective." *Burks*, 437 U.S. at 15. Examples of these defects include "incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." *Id.* When the judicial process is defective, "the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." *Id.*

**{22}**   These societal interests are paramount when a conviction is reversed for trial error. *United States v. Tateo*, 377 U.S. 463, 466 (1964). As the United States Supreme Court noted in *Tateo*:

> It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial . . . if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In

---

[1]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

*Id.*

**{23}** This Court has incorporated that federal analysis into our own jurisprudence. We have recognized when the state fails to prove some or all of the factual elements of the offense charged, "[t]he policy against allowing . . . retrial of the accused . . . is so strong that it simply will brook no relaxation . . . . Once an accused is actually, and in express terms, acquitted by a court, the finality of that judgment will not yield to any attempts to dilute it." *Cnty. of Los Alamos v. Tapia*, 1990-NMSC-038, ¶ 14, 109 N.M. 736, 790 P.2d 1017, *overruled on other grounds by City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 25, 285 P.3d 637. However, "[a]t the opposite end of the spectrum is the case in which the defendant is convicted and his conviction is set aside on appeal on a ground other than insufficiency of the evidence." *Id.* ¶ 21. When we reverse on a ground other than insufficiency of the evidence, "no one doubts that society's interest in administering its laws completely overrides the defendant's interest in freedom from [the] hardships [of reprosecution]." *Id.*

**{24}** Since *Tapia*, we have continually reaffirmed the double jeopardy distinction between insufficient evidence and trial error. *See, e.g.*, *Gonzales*, 2013-NMSC-016, ¶ 23 (noting when a reversal is "based on grounds *other than insufficient evidence*, . . . that reversal does not bar retrial"); *Marquez*, 2012-NMSC-031, ¶ 15 (recognizing "'a defendant may not be retried after the conviction is set aside because of insufficient evidence'" but "a defendant may be retried if the conviction was set aside because of trial error" (quoting *Lizzol*, 2007-NMSC-024, ¶ 15)); *State v. Lynch*, 2003-NMSC-020, ¶ 18, 134 N.M. 139, 74 P.3d 73 (recognizing "the right to be free from double jeopardy is not an absolute right" and "the public's strong interest in seeing the guilty punished after a fair trial . . . allows the [s]tate to reprosecute a defendant who has successfully appealed his or her conviction on the basis of trial error").

## 2.      Reversal for "nonexistent crime" is reversal for trial error

**{25}** Reversals on the basis of "nonexistent crime" involve a pure question of law rather than a matter of fact, thus reversals on that basis "fall[] squarely within the rule that retrial is permissible after a conviction is reversed on appeal." *Montana v. Hall*, 481 U.S. 400, 402, 404 (1987); *see also Gonzales*, 2013-NMSC-016, ¶¶ 21-23 (discussing *Hall* with approval). As the United States Supreme Court explained, conviction for a nonexistent crime is treated as a defect in the charging document and does not have to do with the defendant's guilt. *See Hall*, 481 U.S. at 403-04 (noting that a reversal for nonexistent crime is "unrelated to guilt or innocence" but rather "is reversed because of a defect in the charging instrument"). When reversal is on the basis of a defective charging document, retrial is permitted. *See Ball v. United States*, 163 U.S. 662, 672 (1896) ("[I]t is quite clear that a defendant who procures a judgment against him upon an indictment to be set aside may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted."). In other

words, where the prosecution "simply relied on the wrong statute in its . . . information[, i]t is clear that the Constitution permits retrial." *Hall*, 481 U.S. at 404.

**{26}** Contrary to this clear statement of law, Defendant argues the reversal of his felony murder conviction as a nonexistent crime is the equivalent of an acquittal because it is tantamount to a finding that the evidence was legally insufficient. We reject Defendant's argument and clarify that reversal for nonexistent crime is reversal for trial error.

### a. Defendant's conviction for felony murder was supported by sufficient evidence

**{27}** The test for whether a reversal is for insufficient evidence—and therefore an acquittal for double jeopardy purposes—is whether the state's evidence failed to establish beyond a reasonable doubt "some or all of the factual elements of the offense charged." *Scott*, 437 U.S. at 97. This is the same inquiry we conduct in any sufficiency review, where we compare the evidence in the record to the jury instructions given, even when the jury instruction is defective. *See, e.g.*, *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (text only) (quoting *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517)). When conducting this review, it is clear we are not reversing Defendant's felony murder conviction for insufficient evidence.

**{28}** Under the jury instructions given in this case, the State's evidence established beyond a reasonable doubt all of the factual elements of felony murder presented to the jury. The jury determined that: (1) Defendant "intended that another person commit the felony of aggravated assault" and "helped, encouraged, or caused" that felony to be committed; (2) "[a]nother person committed the felony of aggravated assault . . . under circumstances or in a manner dangerous to human life"; (3) "[d]uring the commission of [that] felony [Victim] was killed"; and (4) Defendant "helped, encouraged, or caused the killing to be committed" and "intended the killing to occur or knew that [he] was helping to create a strong probability of death or great bodily harm."

**{29}** Here, evidence was presented that Defendant and Taylor engaged in an altercation at the house party; pulled guns on partygoers; shined laser sights around; made comments indicating they were searching for a specific individual; and began firing towards partygoers and strafing[2] Borrunda's vehicle, which culminated in Victim's death. Based on the foregoing, the jury could have found all of the elements of felony murder beyond a reasonable doubt as presented in the jury instruction on that crime. Notably, Defendant does not attempt to challenge the sufficiency of the evidence to support any of those factual elements.

**{30}** Instead, Defendant urges us to hold that the evidence was "legally insufficient" because the State failed to prove the predicate felony was collateral to the murder. However, as the State correctly points out, application of the collateral- felony doctrine

---

[2]"[T]o rake (as ground troops) with fire at close range and esp. with machine-gun fire from low-flying aircraft." *Strafe, Merriam-Webster's Collegiate Dictionary* (11th ed. 2005).

requires a legal analysis, not a factual finding made by the jury. Stated differently, the jury instruction on felony murder does not contain as a substantive element that the predicate felony be collateral to the murder, *see* UJI 14-202 NMRA, nor could it contain such an element. That determination is not a factual one. Thus, reversal on the basis of the legal determination that a felony is noncollateral to the murder is not an acquittal, which requires a failure of proof of "the *factual* elements of the offense charged." *Scott*, 437 U.S. at 97 (emphasis added).

### b. As a matter of law, reversal for nonexistent crime is not an acquittal

**{31}** Defendant's argument has been made by defendants in other jurisdictions and, as we do here, courts have rejected it. For example, in *State v. Wright*, 127 P.3d 742, 743-44 (Wash. Ct. App. 2006), the Washington Court of Appeals held double jeopardy did not bar reprosecution after a defendant's conviction for felony murder was reversed. Like Defendant in this case, the defendant in *Wright* argued "that the appellate reversal of his murder conviction was equivalent to an acquittal" because "felony murder convictions predicated on assault . . . are . . . based on legally insufficient evidence." *Id.* at 745. The *Wright* Court rejected the argument, noting that when the Washington Supreme Court held that assault could not serve as the predicate felony for felony murder, it did not make that determination based on sufficiency of the evidence. *Id.* "Rather, the Court engaged in statutory construction and concluded that [the defendant] had been convicted of a nonexistent crime. The problem of conviction for a nonexistent crime is not a failure of proof." *Id.* (citation omitted).

**{32}** The Washington Supreme Court affirmed, adding reversal on the basis of a noncollateral predicate felony "ha[s] nothing to do with evidentiary sufficiency. . . . Thus, reversal of a second degree felony murder conviction predicated on assault falls squarely within the rule announced in *Hall*" that reversal for nonexistent crime is a charging defect that results in retrial. *State v. Wright*, 203 P.3d 1027, 1032 (Wash. 2009) (en banc). The Washington Supreme Court interpreted *Hall* to

> "at least mean[] this: If the state convicts a defendant under the wrong statute (that is, a statute that does not encompass the defendant's otherwise criminal conduct), and that conviction is overturned on appeal, the Double Jeopardy Clause does not forbid retrial under the correct statute (that is, the statute that makes such conduct criminal), so long as there is sufficient evidence to convict under that statute."

*Id.* (quoting *Parker v. Lockhart*, 797 F. Supp. 718, 725 (E.D. Ark. 1992)). Therefore, the Court held, "[b]ecause the defendants' convictions were reversed due to the invalidity of the charge, not insufficient evidence, they may be retried for the same offense." *Id.*

**{33}** This approach is followed by courts around the country, which overwhelmingly hold reversal for nonexistent crime based on the collateral-felony doctrine is reversal for trial error and not evidentiary insufficiency. *See, e.g.*, *Parker v. State*, 779 S.W.2d 156, 157-58 (Ark. 1989) (holding double jeopardy did not bar retrial where a felony murder conviction was reversed for noncollateral predicate felony because reversal was not

based on evidentiary insufficiency); *Lockhart*, 797 F. Supp. at 718-19, 722, 725 (affirming the Arkansas Supreme Court's analysis in *Parker*, 779 S.W.2d 156); *State v. Wilson*, 680 So. 2d 411, 413 (Fla. 1996) (holding double jeopardy did not bar retrial where the attempted felony murder conviction was reversed as a nonexistent crime because "[t]here was no acquittal—explicit or implicit—for either the attempted felony murder charge or any lesser offenses"); *Delgado v. Fla. Dep't Corr.*, 659 F.3d 1311, 1325-29 (11th Cir. 2011) (affirming the Florida Supreme Court's analysis that the reversal of a felony murder conviction for noncollateral predicate felony was a reversal for trial error, not evidentiary insufficiency).

{34}    The Seventh Circuit explained the distinction between reversal for trial error in the context of a nonexistent crime and reversal for evidentiary insufficiency in *United States v. Lanzotti*, 90 F.3d 1217 (7th Cir. 1996). In *Lanzotti*, the district court overturned a conviction and granted a new trial after finding the statute under which the defendants had been charged "could not directly cover the conduct of the gambling business in [that] case." *Id.* at 1221. The Seventh Circuit held the district court's ruling was not an acquittal, and "the prosecution's oversight regarding the applicability of a law, without more, will not bar a retrial for the same conduct under a correct legal theory." *Id.* at 1224.

{35}    We share the view of these courts. At bottom, a conviction for a nonexistent crime is a charging defect. *State v. Baca*, 1997-NMSC-059, ¶ 51, 124 N.M. 333, 950 P.2d 776 (noting conspiracy to commit depraved-mind murder is a nonexistent crime and therefore "the charge of conspiracy to commit depraved-mind murder was not valid"). As such, "[t]he problem of conviction for a nonexistent crime is not a failure of proof." *Wright*, 127 P.3d at 745. Instead, it is a "legal error of the prosecution" that results in a conviction by means of a "flawed judicial process." *Lanzotti*, 90 F.3d at 1223. In *Hall*, the United States Supreme Court made "clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument." 481 U.S. at 404. In such cases, jeopardy continues and the defendant "may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." *Ball*, 163 U.S. at 672.

{36}    In accordance with this framework, New Mexico cases that reverse on the basis of a nonexistent crime have generally permitted retrial. *See, e.g.*, *State v. Figueroa*, 2020-NMCA-007, ¶¶ 13-18, 457 P.3d 983 (allowing retrial even though the defendant was convicted of a nonexistent crime because sufficient evidence supported the convictions on the jury instructions given); *Arrendondo*, 2012-NMSC-013, ¶¶ 21-22 (allowing retrial because sufficient evidence existed under the erroneous jury instructions given even though the defendant may have been convicted of a nonexistent crime); *Bravo*, 2007-NMSC-021, ¶¶ 19, 21 (allowing retrial where the defendant might have been convicted of a nonexistent form of felony murder); *State v. Mascarenas*, 2000-NMSC-017, ¶¶ 13, 31-33, 129 N.M. 230, 4 P.3d 1221 (allowing retrial where sufficient evidence supported conviction on the jury instructions given even though there was "a distinct possibility" the defendant was convicted of a crime that "does not exist in New Mexico").

**{37}** However, some New Mexico cases have precluded retrial of a nonexistent crime, apparently without analysis of *Hall* or double jeopardy considerations. *See State v. Johnson*, 1985-NMCA-074, ¶ 24, 103 N.M. 364, 707 P.2d 1174 (remanding for a new trial on a lesser-included offense of second-degree murder after holding the crime of attempted depraved-mind murder, for which the defendant was originally convicted, does not exist); *Baca*, 1997-NMSC-059, ¶¶ 2, 51-53, 56 (barring retrial for nonexistent crime of conspiracy to commit depraved-mind murder). Therefore, we abrogate those cases in so far as their result conflicts with our holding today.

**{38}** Applying this general rule to the facts of this case leads to one result. Both parties agree that Defendant's felony murder conviction should be vacated as a nonexistent crime. Defendant does not challenge the sufficiency of the evidence under the jury instructions given. Because we vacate Defendant's felony murder conviction as a nonexistent crime, we reverse on the basis of a charging defect rather than lack of evidence. Double jeopardy principles therefore allow retrial on the same or lesser charge.[3]

### 3. Because Defendant has not been acquitted, the direct remand rule does not apply, and he may be retried on the same and lesser-included offenses

**{39}** Defendant argues the direct remand rule precludes retrial or resentencing on the lesser-included offense of second-degree murder. The State argues the direct remand rule always allows remand for entry of judgment on second-degree murder after a felony murder conviction is vacated. Neither is correct.

**{40}** We clarify the direct remand rule applies only to cases that are reversed on appeal for insufficient evidence—in other words, cases where the defendant has been acquitted—and its application depends on the evidence and the jury instructions given in each case. In this case, because we vacate Defendant's felony murder conviction based on trial error rather than insufficient evidence, Defendant has not been acquitted, and the direct-remand rule does not apply.[4] We nevertheless take this opportunity to explain the origins and proper application of the direct-remand rule, as it seems to be the source of some confusion.

---

3We reject Defendant's assertion that retrial on second-degree murder "would most certainly constitute double jeopardy with [Defendant's] conviction for shooting at a motor vehicle." The homicide and the shooting at a motor vehicle in this case involve separate victims. Therefore, Defendant's reliance on *State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426, is inapposite because that case involved "the theoretically separate offenses of causing great bodily harm to a person by shooting at a motor vehicle and the homicide resulting from the penetration of the *same bullet into the same person*." (Emphasis added.)

4We note Defendant also asserts that the compulsory joinder rule bars retrial. This argument does not avail. Reprosecution after reversal for trial error is a continuing prosecution—part of one continual jeopardy. Thus, amendment to the charging document would not result in "piecemeal prosecution." *Cf. State v. Gallegos*, 2007-NMSC-007, ¶ 14, 141 N.M. 185, 152 P.3d 828 (stating compulsory joinder reflects "our distaste for 'piecemeal prosecution'" (citations omitted)); *Gonzales*, 2013-NMSC-016, ¶ 34 (barring reprosecution based on insufficient evidence, not trial error).

**{41}** The direct-remand rule stems from *State v. Haynie*, 1994-NMSC-001, ¶¶ 4-5, 116 N.M. 746, 867 P.2d 416, where we remanded for resentencing on second-degree murder after vacating the defendant's first-degree murder conviction for insufficient evidence. The question in *Haynie* was whether the defendant was entitled to choose between retrial or remand. *Id.* ¶ 2. We held that he was not. Instead, because "[t]he evidence show[ed] that Haynie participated in the murder of the first victim by beating and stabbing the victim and show[ed] that Haynie shot the second victim and slit his throat," and there was no evidence of provocation, "the interests of justice would not be served by remanding [the] case for a new trial." *Id.* ¶ 3.

**{42}** The direct-remand rule, as articulated by *Haynie*, is that "a court may order resentencing on an adequately proven lesser included offense when reversing the defendant's conviction of a greater offense *for insufficient evidence*." *Id.* ¶ 2 (emphasis added) (citing *Dickenson v. Israel*, 482 F. Supp. 1223, 1225-26 (E.D. Wis. 1980)). This is because "there is no need to retry a defendant for a lesser included offense when the elements of the lesser offense necessarily were proven to a jury beyond a reasonable doubt." *Id.* ¶ 4.

**{43}** *Haynie* also demonstrates that appellate courts have significant latitude in directing the disposition of a case after remand because the ultimate inquiry is whether retrial or resentencing is in the interests of justice. The *Haynie* Court contrasted the facts of that case with those of *State v. Garcia*, 1992-NMSC-048, ¶ 37, 114 N.M. 269, 837 P.2d 862, in which we held "that the interests of justice will be better served in this case by remanding for a new trial on the offenses of second degree murder and voluntary manslaughter" after vacating a first-degree murder conviction for insufficient evidence. *See Haynie*, 1994-NMSC-001, ¶¶ 2-3. The *Haynie* Court reasoned that the interests of justice were served by retrial in *Garcia* rather than direct remand for entry of judgment on second-degree murder because the defendant in *Garcia* had persuaded this Court on rehearing that there was sufficient evidence of provocation such that a jury should determine whether the homicide constituted second-degree murder or voluntary manslaughter. *Haynie*, 1994-NMSC-001, ¶ 2. Together, *Haynie* and *Garcia* indicate when there is a genuine factual question for the jury to resolve on remand, retrial serves the interests of justice, *see Garcia*, 1992-NMSC-048, ¶¶ 35-37, but when the jury has already found the elements of a lesser included offense beyond a reasonable doubt, the interests of justice are better served by direct remand for entry of judgment on the lesser included offense, *see Haynie*, 1994-NMSC-001, ¶ 3.

**{44}** We subsequently honed the direct-remand rule from *Haynie* in *State v. Villa*, 2004-NMSC-031, ¶¶ 12-15, 136 N.M. 367, 98 P.3d 1017, wherein we held an appellate court may not remand for resentencing on a lesser-included offense unless the jury was instructed on that lesser offense at trial. Once again, *Villa* considered the broader interests of justice in reaching its ultimate conclusion. *Id.* (reasoning that entry of judgment on a lesser-included offense when the jury had not been instructed on that offense would result in unfairness to the defendant on multiple axes). We note *Villa* was explicitly a case involving remand after a conviction was vacated for insufficient evidence—i.e., after acquittal of a greater offense—thus, to the extent it modified *Haynie*, it did not expand *Haynie* beyond the context of acquittals. *See id.* ¶ 1 (noting

the defendant's convictions were vacated for insufficient evidence); *id.* ¶ 8 ("The question presented is whether, *following reversal of a conviction due to insufficient evidence*, an appellate court may remand for entry of judgment of conviction and resentencing for a lesser-included offense, where the jury had not been instructed on that lesser offense at trial." (emphasis added)).

**{45}** Finally, we applied the direct-remand rule in *State v. Tafoya*, 2012-NMSC-030, ¶ 34, 285 P.3d 604, wherein we vacated the defendant's felony murder conviction and directly remanded for entry of judgment on second-degree murder. At issue in *Tafoya* was whether "shooting entirely *within* a motor vehicle" constituted "shooting at or from a vehicle" within the meaning of NMSA 1978, Section 30-3-8(B) (1993). *Tafoya*, 2012-NMSC-030, ¶ 2. Crucially, we declined to "reach [the d]efendant's second argument, that shooting at or from a motor vehicle cannot serve as the requisite collateral felony for a felony murder conviction." *Id.*

**{46}** Thus, in *Tafoya*, our inquiry was a factual one: whether the state met its burden to prove the element of "shooting at or from" with evidence that the defendant shot "within" a vehicle. *See id.* ¶¶ 9-32. In other words, we vacated the defendant's felony murder conviction *not* because we determined that shooting at or from can never serve as a predicate felony for felony murder, but rather because under the facts of that case, it could not serve as the predicate felony because the state had not sufficiently proven the defendant shot "at or from" a motor vehicle. Therefore, when we vacated the defendant's felony murder conviction, we vacated for insufficient evidence rather than nonexistent crime. As such, double jeopardy barred retrial on the greater offense, and the direct-remand rule applied to any lesser-included offense on which the jury had been instructed. Accordingly, after determining that the jury had found all of the elements of second-degree murder within the jury instruction given on felony murder, we concluded that direct remand for entry of judgment on second-degree murder was in the interests of justice. *Id.* ¶ 34.

**{47}** We derive several principles from these cases, none of which apply to reversals for trial error. As a threshold matter, the direct-remand rule in New Mexico applies solely to cases involving an appellate reversal for insufficient evidence. Normally, double jeopardy bars retrial in such cases. *Burks*, 437 U.S. at 18. However, if the jury has been instructed on a lesser-included offense and the record demonstrates that sufficient evidence supports that offense, then the appellate court has the discretion to remand for resentencing or retrial on the lesser-included offense. *See Villa*, 2004-NMSC-031, ¶¶ 1, 9. The appellate court must exercise that discretion by considering whether retrial or resentencing would better serve the interests of justice, in view of the facts and jury instructions given in each particular case. Thus, contrary to Defendant's argument, our direct-remand rule is not a rule of general applicability to all reversals, but specifically applies to reversals for insufficiency of the evidence where the jury has been instructed on a lesser-included offense. And because application of the direct-remand rule requires a case-by-case analysis, it cannot be said that all reversals of a felony murder conviction will warrant direct remand for entry of judgment on second-degree murder, contrary to the argument of the State. Instead, reviewing courts must exercise their judgment in applying these principles.

**4.    The State may not retry Defendant for first-degree willful and deliberate murder, but it may retry on a valid theory of first-degree felony murder**

**{48}**    After we vacate Defendant's felony murder conviction on appeal, the State's ability to reprosecute Defendant for Victim's death is governed by double jeopardy principles. Because the district court acquitted Defendant of first-degree willful and deliberate murder through a directed verdict at trial, reprosecution on that charge is barred by double jeopardy. *Lizzol*, 2007-NMSC-024, ¶ 15. However, because we vacate Defendant's conviction of first-degree felony murder as a nonexistent crime, the State may elect to reprosecute him on that charge if the State determines it can proceed on the basis of a legally adequate predicate felony. The State may also elect to reprosecute Defendant for any lesser-included offense of felony murder. Because we reverse Defendant's conviction for trial error, the direct-remand rule does not apply. Accordingly, we do not directly remand for resentencing on any lesser-included offense of felony murder.

**C.    Only One Conspiracy Conviction Was Supported by the Evidence**

**{49}**    Under *State v. Gallegos*, 2011-NMSC-027, ¶ 55, 149 N.M. 704, 254 P.3d 655, this Court employs a "rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." The State has not attempted to rebut this presumption. Instead, the State concedes the prosecution "did not establish that Defendant entered into multiple conspiracies" because it did not meet its "heavy burden" under *Gallegos* to prove the existence of separate agreements to brandish handguns and then to shoot at Borrunda's car. This concession is appropriate.

**{50}**    As Defendant correctly points out, "[t]he only evidence of any conspiracy in this case was the fact that [Defendant] and [Taylor] appeared to act in concert." To support the agreement constituting the alleged first conspiracy, the prosecutor argued Defendant and Taylor were "on a team. They, by their actions together, agree to pull out those weapons during this fight." To support the agreement for the second alleged conspiracy, the prosecutor argued, "Count seven is just basically like aggravated assault. Agreed to commit that same crime. 'He's in there. He's in there.' We're agreeing, we're shooting at the vehicle."

**{51}**    These two actions—"pull[ing] out those weapons" and "shooting at the vehicle"—do not overcome the high bar to rebut the presumption of a single conspiracy. There is no evidence that there were different victims, different types of harm, different co-conspirators, or even a break in time that might indicate these actions were anything other than unitary conduct supporting a single conspiracy charge. *See Gallegos*, 2011-NMSC-027, ¶¶ 56-64 (applying a totality of the circumstances test to determine whether their presumption of singularity had been overcome). We therefore vacate one of Defendant's conspiracy convictions.

## D.    The Four-Year Firearm Enhancement Was Illegal

**{52}**    The jury found Defendant used a firearm in the commission of aggravated assault (by brandishing a firearm). At sentencing, the district court stated the jury's finding "require[d]" and "obligated" the court to enhance Defendant's sentence by four years. The relevant sentencing enhancement statute in effect at the time of the crime, NMSA 1978, § 31-18-16(B) (2020), provided in relevant part:

> When a separate finding of fact by the court or jury shows that a firearm was brandished in the commission of a noncapital felony, the basic sentence . . . shall be increased by three years, except that *when the offender is a serious youthful offender* or a youthful offender that received an adult sentence, the sentence imposed by this subsection *may be increased by one year*.

(Emphasis added.)[5]

**{53}**    Therefore, as Defendant argues and the State correctly concedes, the district court only had statutory authority to enhance Defendant's sentence by one year, and doing so was discretionary rather than mandatory. The district court's imposition of a four-year sentencing enhancement was therefore illegal. *See State v. Martinez*, 1998-NMSC-023, ¶ 12, 126 N.M. 39, 966 P.2d 747 ("A trial court's power to sentence is derived exclusively from statute."). We reverse.

## E.    Defendant's Conviction for Shooting at a Motor Vehicle Was Proper

### 1.    There was substantial evidence that Defendant committed shooting at a motor vehicle

**{54}**    Defendant argues there was insufficient evidence he committed the crime of shooting at a motor vehicle because "the evidence only supports a finding that [Taylor] shot at [Borrunda's] car; not [Defendant]." Defendant points to the uncontradicted testimony that Defendant's laser sight was red, but Borrunda saw a green laser light—associated with Taylor's gun—inside her car before the shots were fired. No direct eyewitness testimony established Defendant shot Borrunda's car.

**{55}**    Defendant argues the physical evidence cannot establish that Defendant shot Borrunda's car either, because linking the physical evidence to Defendant's acts requires "pil[ing] inference upon inference." Defendant challenges the following inferences: first, that the casings collected were from the bullets fired during the incident; second, that the casings collected were "the total number of bullets fired" during the incident; third, that "[o]nly two of the [four] holes in [Borrunda's] car could have come from .45 caliber bullets"; fourth, that Defendant had a 9mm gun because of

---

[5]Section 31-18-16 was amended in 2022, but the district court's power to enhance the sentence of a serious youthful offender is unchanged from the 2020 version. *See* § 31-18-16(B) (2022) ("[W]hen the offender is a serious youthful offender or a youthful offender that received an adult sentence, the sentence imposed by this subsection may be increased by one year.").

the 9mm ammunition found in his home; and finally, that at least one of the bullets fired into Borrunda's car must have been Defendant's.

**{56}** The State argues the jury's chain of inferences was reasonable. The State relies on the following facts: of ten casings recovered from the scene, eight were from 9mm bullets, while only two were from .45 caliber bullets; Borrunda's car was struck by four or five bullets; and 9mm bullets were found in Defendant's home. Thus, the only true inferences needed to conclude that Defendant fired at Borrunda's car are: (1) that the bullet casings were from the incident and not a different incident; and (2) that Defendant's possession of 9mm ammunition indicated that he had a 9mm gun. Both of these inferences are supported by the evidence, according to the State. We agree with the State.

**{57}** Under the standard of review for sufficiency of the evidence, this Court "views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (text only) (citation omitted). "A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (text only) (citation omitted).

**{58}** As the State asserts, "[e]ach step in the chain of reasoning was either premised on admitted evidence or a rational and logical deduction from those facts." The inference that the bullet casings collected on July 31 were fired during the incident on July 31 is a rational inference. It does not require speculation, guess, or conjecture. Defendant points out that these casings could have been from bullets fired during earlier incidents, and "there could have been other casings fired July 31 that were *not* collected," but those alternative explanations are irrelevant under the standard of review. "We do not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence, and we do not weigh the evidence or substitute our judgment for that of the fact finder." *Montoya*, 2015-NMSC-010, ¶ 52 (text only) (citation omitted).

**{59}** Similarly, it was reasonable for the jury to infer that Defendant shot a 9mm handgun from the evidentiary facts that he possessed 9mm ammunition and was seen brandishing a handgun on the night of the incident. Those facts can rationally lead to the conclusion that Defendant brandished a 9mm handgun on the night of the incident. *Cf. id.* ¶ 53 ("Just because the evidence supporting the conviction was circumstantial does not mean it was not substantial evidence." (text only) (citation omitted)). In short, although the jury could have interpreted the evidence in a different way, it was not "impermissibly unreasonable" for the jury to draw these inferences from the evidence presented. *Id.* ¶ 52 (internal quotation marks and citation omitted).

**{60}** Because it was rational to infer from the evidence that (1) the bullet casings collected were from bullets fired during the incident, and (2) Defendant fired a 9mm handgun, then it takes no further speculation to reach the conclusion that Taylor fired two .45 rounds and Defendant fired eight 9mm rounds during the incident. Because

Borrunda's car was shot with more than two bullets and Taylor only fired two rounds, it was reasonable for the jury to conclude Defendant fired the bullets that caused the other bullet holes; ergo, Defendant shot at a motor vehicle.

**2.      Double jeopardy is not violated by Defendant's convictions for shooting at a motor vehicle and aggravated assault**

**{61}**    The jury found Defendant guilty of aggravated assault based on a jury instruction that provided, in relevant part:

> 1.       . . . Defendant brandished a handgun;
>
> 2.       . . . Defendant's conduct caused . . . Borrunda to believe . . . Defendant was about to intrude on . . . Borrunda's bodily integrity . . . ;
>
> 3.       A reasonable person in the same circumstances as . . . Borrunda would have had the same belief.

**{62}**    The jury also found Defendant guilty of shooting at a motor vehicle based on a jury instruction that provided, in relevant part, "Defendant willfully shot a firearm at a motor vehicle with reckless disregard for another person."

**{63}**    Defendant contends these two convictions violate double jeopardy by imposing multiple punishments for unitary conduct under two separate statutes, thus posing a "double description" question. Double description questions are analyzed through a two-part test: (1) "whether the conduct underlying the two convictions was unitary"; and, if it is, then (2) "whether it was the Legislature's intent to punish the two crimes separately." *State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747 (discussing *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223).

**{64}**    In this case, the State argues the conduct is not unitary. Both parties rely on this Court's opinion in *State v. Porter*, which held aggravated assault and shooting from a motor vehicle were not separately punishable offenses where the underlying conduct was a single gunshot from a motor vehicle towards a single victim. 2020-NMSC-020, ¶¶ 3-4, 43, 476 P.3d 1201.

**{65}**    In *Porter*, we expressly acknowledged our holding was based on the facts of that case, and we did not intend to create a blanket rule for all cases in which a defendant is convicted for both aggravated assault and shooting at or from a motor vehicle. *See id.* ¶ 14 ("If the [s]tate had prosecuted a charge of aggravated assault . . . based on [the victim's] reasonable apprehension of danger from [the d]efendant pointing the gun prior to shooting, or argued for sufficient indicia of distinctness to support that charge, a different analysis would be required."); *see also id.* ¶ 43 ("Although double jeopardy protects [the d]efendant from being punished for both aggravated assault . . . and shooting from a motor vehicle in this case, we note that it is possible for a defendant to violate both statutes without committing the same offense. Whether a defendant is protected will depend on which alternative was prosecuted based on the state's legal

theory of the offense and the alternative for which the defendant is convicted."). Therefore, *Porter* provides an entry point for the analysis of the facts of this case but it does not control the result here.

**{66}** The first step under *Porter*, as with every double description question, is determining whether the conduct was unitary. "Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished. The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." *Id.* ¶ 12 (text only) (citations omitted). *Porter* recognized one way that courts have characterized the question of unitary conduct is to ask whether one criminal act was completed before the other criminal act began. *See id.* ¶ 14 (discussing *State v. Jacobs*, 2000-NMSC-026, ¶ 25, 129 N.M. 448, 10 P.3d 127, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, 478 P.3d 880).

**{67}** In this case, the acts comprising aggravated assault were completed before the act of shooting at a motor vehicle began. Under the jury instructions given in this case, Defendant completed the crime of aggravated assault when he "brandished a handgun" and caused Borrunda to reasonably fear for her safety. The State presented evidence that Borrunda saw Defendant brandishing his weapon with the red laser while she was outside, away from her vehicle. The sight of Defendant and Taylor brandishing guns caused Borrunda to "freak[] out" and feel certain that she "had to get out of there," at which point she ran for the shelter of her car to try to escape from the danger.

**{68}** At that moment, the crime of aggravated assault was complete. Defendant's brandishing of a gun caused Borrunda to reasonably fear for her safety, to the point where Borrunda took affirmative steps to protect herself from that danger. Even though this latter element is not required to prove aggravated assault, it is confirmation that Borrunda, in fact, perceived extreme danger and responded accordingly. This action (brandishing) and consequence (reasonable fear) constitute the entire crime of aggravated assault. Stated differently, if Defendant had put away his gun and walked away from the scene at the moment Borrunda ran to her car, he could have been criminally liable for aggravated assault based solely on the acts that already occurred. Notably, no shots had been fired by the time Borrunda ran for her car, thus the crime of shooting at a motor vehicle had not yet begun at the time the aggravated assault was already completed.

**{69}** Thus, contrary to Defendant's contention that "[t]here is no rational way of dividing the conduct into a separate assault and shooting," the clear dividing line is the point at which Defendant had completed the assault by brandishing a gun and causing Borrunda to reasonably fear for her safety, sending her fleeing to her car. Defendant even acknowledges that Borrunda "ran to her car in response to seeing guns," thus implicitly acknowledging that Borrunda was placed in fear by Defendant's brandishing a gun—the only elements required for aggravated assault.

**{70}** For the foregoing reasons, the conduct underlying Defendant's aggravated assault conviction is not unitary with the conduct underlying the shooting at a motor

vehicle conviction. "If the conduct is not unitary, then there is no double jeopardy violation." *State v. Torres*, 2018-NMSC-013, ¶ 18, 413 P.3d 467.

## F.     The Prosecutor Did Not Violate *Batson*[6] by Using a Peremptory Challenge to Strike a Black Juror

{71}    *Batson* challenges proceed in three parts. *State v. Salas*, 2010-NMSC-028, ¶¶ 31-32, 148 N.M. 313, 236 P.3d 32. "First, the opponent of a peremptory challenge bears the burden to establish a prima facie case indicating that the peremptory challenge has been exercised in a discriminatory way." *Id.* ¶ 31. A prima facie case is made when the opponent can show the peremptory challenge was used against "a member of a protected group" *and* "the facts and other related circumstances raise an inference that the individual was excluded solely on the basis of his or her membership in a protected group." *Id.*

{72}    If the opponent makes that prima facie showing, then the proponent bears the burden of proffering "a race or gender-neutral explanation." *Id.* ¶ 32. "The second step of this process does not demand an explanation that is persuasive, or even plausible. At this second step . . . , the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam) (text only) (citations omitted).

{73}    Finally, if the proponent proffers a race-neutral explanation, "'the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial . . . discrimination.'" *Salas*, 2010-NMSC-028, ¶ 32 (quoting *Purkett*, 514 U.S. at 767). "'[T]he ultimate burden of persuasion . . . rests with, and never shifts from, the opponent of the strike.'" *Id.* (quoting *Purkett*, 514 U.S. at 768) (brackets in original).

{74}    In response to a question on the juror questionnaire asking whether he or any of his immediate family members had been a defendant in a criminal case, Juror 22 wrote, "Yes . . . too much to explain." During voir dire, Juror 22 disclosed he thought that he knew Defendant, but was not sure, and he was not sure how he might know Defendant. Based on those responses, the State initially moved to strike Juror 22 for cause. The district court denied the for-cause challenge because Juror 22 had stated he could be fair and impartial despite his possible familiarity with Defendant.

{75}    The State then used a peremptory strike against Juror 22. Defendant challenged the strike under *Batson* on the basis that both Defendant and Juror 22 were Black. The prosecutor offered the following reasons for exercising the peremptory strike: (1) Juror 22 might know Defendant; (2) Juror 22 answered "Yes . . . too much to explain" on the juror questionnaire; and (3) he answered "smothered burritos" on the juror questionnaire in response to a question about any special accommodations that the juror might need. Defendant responded that the State should have developed these issues during voir dire, which prompted the district court to ask, "alright, but what about your *racial*

---

6*Batson v. Kentucky*, 476 U.S. 79 (1986).

challenge?" Defense counsel stated, "I don't think that the State has provided a sufficient answer to overcome the *Batson* challenge." The district court denied the challenge without comment.

**{76}** Defendant did not make a prima facie showing of racial discrimination because he only asserted the first part of the two prong test: that is, he only asserted Juror 22 was Black, thus a member of a protected group. He did not offer any "facts and other related circumstances [that] raise an inference that the individual was excluded solely on the basis of his or her membership in a protected group." *Salas*, 2010-NMSC-028, ¶ 31. As the State points out, Defendant made no showing at trial and makes no claim on appeal that Juror 22 was the only Black juror or that the prosecutor engaged in a pattern of striking Black jurors on the venire.

**{77}** Even if Defendant made a prima facie showing, the State offered multiple legally valid, nondiscriminatory reasons for the peremptory strike. *See id.* ¶ 38 (holding the state's explanations for striking jurors were not inherently discriminatory or pretextual). "[A] prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (internal quotation marks and citation omitted). And when asserting a race-neutral reason for a peremptory strike, "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Id.* at 97.

**{78}** Defendant did not meet his burden of proving the peremptory strike was discriminatory, *see Salas*, 2010-NMSC-028, ¶¶ 31-32, therefore the district court properly denied Defendant's *Batson* challenge.

## IV.    CONCLUSION

**{79}** Defendant's conviction for felony murder is legally invalid because it is based on the predicate felony of aggravated assault. Therefore, we vacate that conviction as a nonexistent crime. Double jeopardy does not preclude retrial on that charge because double jeopardy only bars retrial after an acquittal, whereas reversal on the basis of nonexistent crime is a correction of trial error. Because we reverse on the basis for trial error and not for insufficient evidence, the direct remand rule does not apply. Therefore, retrial on felony murder or a lesser included offense is permissible. On the other hand, because Defendant was acquitted of willful and deliberate first-degree murder, double jeopardy bars retrial on that theory.

**{80}** Because the State presented insufficient evidence to support a second conspiracy conviction, we vacate one of Defendant's two conspiracy convictions without the possibility of retrial.

**{81}** Because the district court imposed a four-year firearm enhancement when it only had the statutory authority to impose a one-year firearm enhancement, we vacate the illegal sentence and remand for resentencing according to statute.

**{82}** Finding no merit in Defendant's other arguments, we affirm Defendant's remaining convictions and remand to the district court for proceedings consistent with this opinion.

**{83}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**